**AFFIDAVIT OF SUPPORT OF A SEARCH WARRANT**

I, James M. Smith, a Postal Inspector with the United States Postal Inspection Service, being duly sworn, depose and say that:

1. I am a United States Postal Inspector for the United States Postal Inspection Service assigned to the Washington, D.C. Domicile and have been so employed since 2003. I am currently assigned to the Washington D.C. external crimes team. My primary focus is the investigation into credit card fraud and identity theft.

2. I have been a law enforcement officer for the past nine years. Since October 2003, I have been employed as a United States Postal Inspector with the United States Postal Inspection Service. Prior to my employment with the United States Postal Inspection Service, I was employed as a United States Secret Service Agent from 2000 to 2003. From 1996 to 2000 I was an enforcement officer with the Arlington County, Virginia Police Department and the Loudoun County, Virginia Sheriff's Department since 1996. My law enforcement training and experience include preparation, presentation and service of criminal complaints, arrest and search warrants. In addition, I have received training in general law enforcement and criminal investigations to include violations involving credit card fraud, forgery and theft statutes.

3. The information contained in this affidavit is based on my personal knowledge and observations during the course of this investigation; on information conveyed to me by other law enforcement or government officials, and on my review of records, documents, and other physical evidence obtained during this investigation. This affidavit

is not intended to include every fact observed by me or known to the government. The below stated took place within the District of Columbia.

4. This affidavit contains information necessary in support of an application for a search warrant to search all premises including the residential area, curtilage, outbuilding, storage located or corresponding to xxxxxxxxxxxxxxx, Washington, DC 20002, which is located within the District of Columbia. This property is more fully described in Attachment A of this affidavit.

5. The United States Postal Inspection Service's ongoing investigation has developed probable cause to believe that a person or persons have committed a serious felony offense against the United States in violation of Title 18, United States Code, Sections 1341 (Mail Fraud), 1343 (Wire Fraud), and 1029 (Fraud and related activity in connection with access devices) and probable cause to believe that the place described in the attachment to this affidavit contains evidence, contraband, instrumentalities and/or fruits of these offenses, which may be seized pursuant to this warrant that this affidavit supports.

## STATEMENT OF FACTS SUPPORTING PROBABLE CAUSE

6. On or about December 15, 2005, the United States Postal Inspection Service received a complaint from Jon and Freddi Bruschke who reside in Placentia, California stating that someone had contacted their banking institution, Orange County Teachers Federal Credit Union, on November 22, 2005, and without their authority or knowledge changed the mailing address on their Visa credit card account. The address was changed to xxxxxxxxxxxxxxx, Washington, DC 20002. Freddi Bruschke was contacted by the

United States Postal Inspection Service and stated that neither she nor her husband had changed their address from California to xxxxxxxxxxxxxx, Washington, DC, nor authorized anyone to make the change on their behalf.

7.  On December 19, 2005, United States Postal Inspectors contacted representatives of the Postal Service to determine the identity of the individual(s) who receive mail at xxxxxxxxxxxxxx, Washington, DC. It was revealed that a person named Paula Woodward had been living at the address and receiving mail for approximately 2 to 3 years. The Postal Service also indicated that for the past five months, beginning in about July 2005, mail from financial institutions and merchants such as "Amazon.com" and others had been delivered to the address in names other than Paula Woodward. This mail had been accepted at the address and never returned to the Postal Service.

8.  A representative of the United States Postal Service also indicated that the person known to them as Paula Woodward at xxxxxxxxxxxxxx, Washington, DC, would mail approximately three to four packages per month to an international address in Russia using "Global Express" Mail service offered by the United States Postal Service.

9.  On December 19, 2005, United States Postal Inspectors observed and viewed the mail addressed to xxxxxxxxxxxxxx, Washington, DC 20002 that was to be delivered by the Postal Service for that day. A letter was addressed to Paula Burr and other mail was addressed to Paula Woodward. Also, a letter addressed to John Stodghill bearing a return address from Primeway Federal Credit Union in Houston, Texas was also to be delivered that day.

10. On December 19, 2005, United States Postal Inspectors conducted a law enforcement computer database records check. The information from this records check revealed that social security number xxxxx3057 was assigned Ms. Woodward and also a Paula Burr.

11. A property deeds check of xxxxxxxxxxxxxxx, Washington, DC revealed that Paula and George Burr own the property and it was obtained through sale on July 11, 2002.

12. On December 21, 2005, United States Postal Inspectors observed and viewed the United States mail that was to be delivered to xxxxxxxxxxxxxxx, Washington, DC 20002. In addition to other mail, there were four letters addressed to four different individuals, none of whom was Paula Woodward, Paula Burr, or George Burr, bearing return addresses of financial institutions such as, Navy Federal Credit Union, Compass Bank, Schools Financial Credit Union, and Bank of America. The letter from Bank of America was addressed to Ronald R. Nieman.

13. On December 21, 2005, the Postal Inspection Service contacted the Bank of America fraud department to inquire about the Ronald R. Nieman's credit card account. The Bank of America fraud department indicated that Ronald R. Nieman had a Fleet Bank, now a subsidiary of Bank of America, VISA credit card account bearing the credit card number 4305 5001 4064 2185. The fraud investigator indicated that Ronald R. Nieman's account was fraudulently taken over by an unknown individual(s). The investigator stated that Ronald Nieman's actual address is in Brownsville, Texas and that on December 02, 2005, Nieman's billing address on the VISA account (4305 5001 4064 2185) was fraudulently changed to xxxxxxxxxxxxxxx, Washington, DC 20002. The

investigator stated that there had been $900.00 in fraudulent purchases to the VISA credit card account and $2,864 in fraudulent attempted purchases obtained through the internet.

14.  The Bank of America fraud department indicated that according to their records, on December 9, 2005, a fraudulent internet purchase was made from a vendor called "L.A. Computer Center.com" for $867.00.  The Postal Inspection Service contacted a representative of L.A. Computer Center.com who indicated that an internet purchase was made with VISA credit card account number 4305 5001 4064 2185 in the name of Ronald R. Nieman for a computer.  The representative stated that the billing address and the address that the computer was to be shipped to was xxxxxxxxxxxxxxx, Washington, DC 20002.  The computer was shipped in the name of Ronald R. Nieman via Federal Express Corporation.  The L.A. Computer Center.com representative stated that the parcel was delivered and accepted to xxxxxxxxxxxxxxx, Washington, DC 20002.

15.  On December 22, 2005, a mail carrier of the Postal Service stated that in mid-December 2005, a female known to him as Paula Woodward provided him with a package to be mailed to Russia while he was delivering U.S. Mail to xxxxxxxxxxxxxxx, Washington, DC 20002.  The package was to be sent by the U.S. Postal Service's Global Express unit.  The Postal Carrier stated that the package was heavy and he commented to Ms. Woodward about the weight of the parcel.  According to the Postal Carrier, Ms. Woodward replied that there was a computer inside the package.

16.  Based upon your Affiant's training, experience and participation in numerous mail theft and financial crimes investigations involving fraudulent activities, your Affiant has learned and knows:

a. That individuals involved in banking account takeover and re-packaging schemes will fraudulently obtain credit card information from victims and change the mailing address on the account to a fraudulent address. They will then order and purchase merchandise by internet or telephone using the fraudulently obtained credit card information and have it shipped to the fraud address via the United States Postal Service or other commercial delivery carriers.

b. That individuals involved in fraudulent activities often divert mail connected to their fraudulent schemes to other addresses and seeking to advance these fraudulent schemes involving identity theft, access device fraud, credit card and check fraud, often use stolen U.S. Mail to obtain other persons' personal identifiers, account numbers, access devices, and to mail or receive papers and documents related to this type of criminal activity.

c. Those involved in fraud schemes very often place assets in names other than their own to avoid detection of these assets by government agencies; that they often place these assets in corporate entities in order to avoid detection of these assets by government agencies; that even though these assets are in other persons' or companies names, they actually own and continue to use these assets and exercise dominion and control over them.

d. Those involved in mail fraud, wire fraud and re-packaging schemes often send fraudulently obtained merchandise and financial mail to co-conspirators addresses where the merchandise will then be re-packaged and shipped to other co-conspirators via the U.S. Mail and other commercial carriers.

e. That those involved in the aforementioned criminal activity often maintain records, receipts, notes, ledgers, credit card receipts, airline tickets, money orders, and other papers relating to financial institution fraud. That the aforementioned records, receipts, note ledgers, etc., are maintained where they have ready access. In addition, that some of the information related to fraud is often stored in computer equipment and electronic storage media.

f. That it is common for persons involved in fraudulent activities to secrete the proceeds of bank transactions and records of fraudulent transactions in secure locations within their residences, automobiles, and business and storage facilities for their ready access and to conceal them from law enforcement.

g. That persons involved in financial fraud and identity theft conceal in their residences, automobiles, businesses and storage facilities, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of fraudulent activities and evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money made from engaging fraudulent activities.

h. That those involved in fraudulent activities commonly maintain addresses or telephone numbers in books, on papers and computers/electronic media which reflect names, addresses and/or telephone numbers of their associates in the organizations.

i. That it is common for persons involved in fraud schemes to store information pertaining to the fraud schemes on computer hard drives, diskettes, tapes and other media capable of storing information in a form readable by computer.

       This information includes formats for fraudulent identification documents, and letters issued to financial institutions.

j.  That searching and seizing information from computers often requires agents to seize most or all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment.

17. Based on my knowledge it is not uncommon for co-conspirators to use computers to create fraudulent identifications, licenses and employee identifications, as well as to store information concerning a fraud scheme on a computer in order to conceal it from law enforcement authorities.  I know that searching and seizing computers often require investigators to seize all peripherals (e.g. scanners, printers) and electronic media storage devices (e.g. CD-ROM's, PDA's, memory cards, hard disks, diskettes, tapes, laser, disks, thumb disks) to be searched later by a qualified expert in a controlled environment due to the complex way in which information is stored in or by computers.  In order to fully retrieve data from the aforementioned electronic storage media and computers, the computer expert needs all electronic storage devices and the central processing unit (CPU).

18. Based on the investigation conducted by your affiant, I submit that the facts stated in this affidavit establish that there is probable cause that a search warrant be issued authorizing me, and any other assisting law enforcement officers to search the premises known as xxxxxxxxxxxxxxx, Washington, DC  20002 which is further described in Attachment A of this affidavit, and to seize evidence, contraband, fruits and

instrumentalities of the aforementioned violations, specifically the items listed in Attachment B of this affidavit.

_____

James Smith
United States Postal Inspector

Sworn to and Subscribed before me this         day of December 2005.

_____

Judge, United States District Court

ATTACHMENT A

    a.)    xxxxxxxxxxxxxxx, Washington, DC 20002 is described as a two story above ground brick structure. A white awning covers the entrance supported by brick columns. The entrance has a black rod iron security storm door with a white exterior door behind it. To the right of the front entrance the numbers "241" are affixed to white door frame.

ATTACHMENT B

The following is a list of items to be seized through the execution of this search warrant:

- a. Mail, books, records, receipts, notes, ledgers and other papers, including any computerized electronic records or paper printouts pertaining to activity related to the transmission, production or negotiation of checks, access devices, credit cards, and or possession of false identifications relating to financial crimes.

- b. Address and/or telephone notebooks and papers, including any computerized or electronic records, reflecting names, addresses and telephone numbers of individuals that may appear to be involved in or related to access device fraud, identity fraud, and the theft of mail.

- c. Books, records, receipts, bank statements and bank records, credit cards, money drafts, letters of credit, wire transfers and money orders and cashiers checks, receipts, pass books, bank checks and any other items evidencing the obtaining, secreting, transfer, concealment and identification making equipment.
- d. Social Security Administration documents, including Numidents Alfadents, Social Security Cards and or applications for Social Security Cards, papers

      with social security numbers, fraudulent identifications and identification making equipment.

e.    United States currency reasonably believed to be the proceeds from fraud schemes.

f.    Photographs of co-conspirators.

g.    Indicia of occupancy, residency and/or ownership of the premises, including but not limited to utility/ and telephone bills, mortgage, deed and lien records, cancelled mail and keys.

h.    Credit cards, in any form and credit card account numbers, access devices, payment devices and or account numbers of any kind.

i.    Mail in the names other than the names of the occupants living at xxxxxxxxxxxxxxx Washington, DC 20002.

j.    Business, personal checks, and counterfeit checks.

k.    Any computer hardware, including file servers, desktop computers, laptop computers, mainframe computers; electronic, magnetic or digital storage devices such as hard drives, zip drives, CD-ROMs, floppy disks, and any other electronic media storage device; any internal and external peripheral devices (e.g. printers, scanners) and any of the above listed records, documents or materials which are maintained on computer located at the premises, to include the device, (computer), wherein these records, documents or materials are maintained.

l.    Computer passwords and other data security devices necessary to gain

        access to any computer equipment or electronic storage devices seized during the search.

m.    Any door, safe, locked boxes or receptacles where the aforementioned items may be stored.

n.    Any and all fruits, instrumentalities, and evidence of the crimes of 18 U.S.C. sections 1341, 1343 and 1029.